**Slip Op. 00-44**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

—————————————————————————————
                                          :

THE TORRINGTON COMPANY,        :

                                       :

       Plaintiff,          :

                                       :

       v.                :    Court No. 98-07-02530

                                       :

UNITED STATES,               :

                                       :

       Defendant,          :

                                     :

SKF USA INC. and SKF GmbH,    :

                                     :

       Defendant-Intervenors.  :

—————————————————————————————:

Plaintiff, The Torrington Company ("Torrington"), moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging one aspect of the Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews</u> ("<u>Final Results</u>"), 63 Fed. Reg. 33,320 (June 18, 1998). Defendant-intervenors, SKF USA Inc. and SKF GmbH (collectively "SKF"), oppose Torrington's motion.

Specifically, Torrington claims that Commerce erred in accepting SKF's home market support rebates because they were not tied to specific transactions. SKF contends that Commerce acted lawfully in accepting its rebates.

**Held:** Torrington's motion is denied. Case dismissed.

Dated: April 19, 2000

<u>Stewart and Stewart</u> (<u>Terence P. Stewart</u>, <u>Wesley K. Caine</u>, <u>Geert De Prest</u> and <u>Lane S. Hurewitz</u>) for Torrington.

<u>David W. Ogden</u>, Acting Assistant Attorney General; <u>David M. Cohen</u>, Director, Commercial Litigation Branch, Civil Division,

United States Department of Justice (<u>Velta A. Melnbrencis</u>, Assistant Director); of counsel: <u>Thomas H. Fine</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States.

     <u>Steptoe & Johnson LLP</u> (<u>Herbert C. Shelley</u> and <u>Alice A. Kipel</u>) for SKF.


                              **OPINION**

     **TSOUCALAS, Senior Judge:**  Plaintiff, The Torrington Company ("Torrington"), moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging one aspect of the Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews</u> ("<u>Final Results</u>"), 63 Fed. Reg. 33,320 (June 18, 1998).  Defendant-intervenors, SKF USA Inc. and SKF GmbH (collectively "SKF"), oppose Torrington's motion.

     Specifically, Torrington claims that Commerce erred in accepting SKF's home market support rebates because they were not tied to specific transactions.  SKF contends that Commerce acted lawfully in accepting its rebates.

**BACKGROUND**

This case concerns the eighth review of the antidumping duty order on antifriction bearings (other than tapered roller bearings) and parts thereof ("AFBs") imported to the United States during the review period of May 1, 1996 through April 30, 1997.[1]  Commerce published the preliminary results of the subject review on February 9, 1998.  See Antifriction Bearings (Other Than Tapered Roller Bearings) And Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom, 63 Fed. Reg. 6512.  Commerce published the Final Results on June 18, 1998.  See 63 Fed. Reg. at 33,320.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a) (1994) and 28 U.S.C. § 1581(c) (1994).

**STANDARD OF REVIEW**

The Court will uphold Commerce's final determination in an antidumping administrative review unless it is "unsupported by

---

[1] Since the administrative review at issue was initiated after December 31, 1994, the applicable law is the antidumping statute as amended by the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994) (effective January 1, 1995) ("URAA").  See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995) (citing URAA § 291(a)(2), (b) (noting effective date of URAA amendments)).

substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (1994).


                              **DISCUSSION**

**I.    SKF's Home Market Support Rebates**

SKF made home market support rebate payments ("rebates" or "rebate 2") to certain of its distributors/dealers "'to ensure that the distributor/dealer obtains a minimum profit level on sales to selected customers.'"  Pl.'s Mem. Supp. Mot. J. Agency R. at 3 (quoting SKF Sec. B QR (Sept. 5, 1996), AR Doc. 42 (GER) at 33). Rebate 2 is an after-market support rebate, granted on a customer-specific basis to SKF's customers, that is, the distributors/dealers, which guarantees the distributors/dealers a certain return on sales of SKF products to the distributors/dealers' customers.  See SKF's Resp. to Pl.'s Mem. Supp. Mot. J. Agency R. at 28 (quoting Commerce SKF Home Market Verification Report (Dec. 12, 1997), AR Doc. 60 (GER) at 8).  The distributors/dealers' minimum profit level is agreed to in advance by SKF GmbH and the distributors/dealers submit the "'invoices that they had presented to their customers as support for rebate 2 payments.'"  Id.  The quarterly produced rebate 2 payments are then calculated by taking "'the difference between the guaranteed return and the actual return on the sale by the distributor/[dealer].'"  Id.  "'To arrive at the factor to be applied against each sale, SKF

divided the total amount of rebate 2 payments on a customer-specific basis by total sales on a customer-specific basis.'" Pl.'s Mem. Supp. Mot. J. Agency R. at 5 (quoting Commerce SKF Home Market Verification Report (Dec. 12, 1997), AR Doc. 60 (GER) at 8).

## II.  Contentions of the Parties

### A. Torrington's Contentions

Torrington contends that Commerce's acceptance of SKF's rebate 2 as a direct price adjustment was unlawful and/or unsupported by substantial evidence because it was "not tied to specific transactions."  Pl.'s Mem. Supp. Mot. J. Agency R. at 2.  In particular, Torrington asserts that reported rebate 2 was diluted because it was allocated evenly over all sales to the distributors/dealers, not only to the sales that were related to the rebate.  See id. at 15.

Torrington further contends that SKF's allocation method runs afoul of the United States Court of Appeals for the Federal Circuit's ("CAFC") rationale in Torrington Co. v. United States ("Torrington CAFC"), 82 F. 3d 1039 (Fed. Cir. 1996), because SKF "failed to show that all reported rebate amounts directly related to the particular products to which the payments actually related." Id. at 2.  Torrington argues that Torrington CAFC followed prior CAFC cases to define "direct adjustments to price [as] . . .

expenses which vary with the quantity sold . . . or that are related to a particular sale." Id. at 7 (citations omitted). Torrington asserts that Commerce had properly followed the CAFC's approach in the fifth administrative review, stating that the proper approach is to accept claims for rebates "'as direct adjustments to price if actual amounts are reported for each transaction [and] . . . [accept] adjustments based on allocations [only if] . . . they are based on a fixed and constant percentage of sales price.'" Pl.'s Mem. Supp. Mot. J. Agency R. at 8 (quoting Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews ("fifth administrative review"), 61 Fed. Reg. 66,472, 66,498 (Dec. 17, 1996)).

Torrington claims that in the Final Results, however, Commerce "abandoned" its prior approach and the approach taken by the CAFC. See id. at 9. As a result, Commerce unlawfully redefined what it considered "direct" by adopting a new methodology. See id. According to Torrington, Commerce's new methodology allowed SKF to report allocated post-sale price adjustments ("PSPAs") if SKF acted to the best of its ability in view of its record keeping system and the results were not unreasonably distortive. See id. Relying on

Lechmere, Inc. v. Nat'l Labor Relations Bd., 502 U.S. 527 (1992), Torrington asserts that Commerce's new methodology is unlawful since it ignores the well-settled definition of "direct" adjustments to price enunciated by the CAFC. See id. at 9-10. Torrington further contends that although the fifth administrative review and Torrington CAFC pre-date the Uruguay Round Agreements Act ("URAA") amendments, "[t]he new statute retains the distinction between 'direct' and 'indirect' expenses and Congress gave no indication that changes in meaning were ever intended." Id. at 11. Therefore, Torrington argues that since Commerce's new methodology must conform with precedent, this Court should review the rebate 2 adjustments by applying the rationale of Torrington CAFC. See Pl.'s Mem. Supp. Mot. J. Agency R. at 12.

Torrington also asserts that although this Court approved of the methodology used by Commerce in Timken Co. v. United States ("Timken"), 22 CIT __, 16 F. Supp. 2d 1102 (1998), it should reconsider that position because Congress did not intend to change Commerce's policy "of putting the burden of proof with the party who intends to benefit from the claim made." Id. at 13. As such, Torrington maintains that even if Commerce's new methodology was applied to the instant case, SKF did not carry its burden of proof. See id. at 17. Specifically, SKF did not prove that their allocation was not distortive and that they reported the adjustment

"'on as specific a basis as possible.'" Id. at 18. Torrington asserts that SKF's allocation of rebate 2 over a large body of sales when it only applied to sales for specified customers was "a priori distortive." Id. at 19.

Torrington also asserts that SKF did not provide substantial evidence to prove that it used its best efforts to make adjustments "'on as specific a basis as possible.'" Pl.'s Mem. Supp. Mot. J. Agency R. at 19. Rather, Commerce excused specific reporting by SKF on the grounds that rebate 2 could not be reported on a "'transaction-specific basis.'" Id. at 20. Torrington also maintains that SKF's argument of infeasibility in undertaking specific reporting is invalid because SKF could have modified its accounting system in order to arrive at more precise data. See id. at 20. Therefore, Torrington requests that this Court reverse Commerce's determination under the Final Results and remand the case to Commerce to deny SKF's adjustment for rebate 2. See id.

### B. Commerce's Contentions

Commerce asserts that its acceptance of allocated rebate 2 is supported by substantial record evidence and is in accordance with the law because it is consistent with the URAA, specifically, with 19 U.S.C. § 1677m(e) (1994). See Def.'s Mem. Opp'n to Mot. J. Agency R. at 2. Commerce maintains that its modified policy of

accepting SKF's allocated rebates as direct price adjustments is consistent with this Court's decision in Timken. See id. at 5. Commerce argues that Torrington CAFC is inapposite to the instant case because it "only held that Commerce is not authorized to grant indirect selling expense treatment to adjustments that are direct selling expenses" and did not "address the question whether Commerce may adjust the home market price by allocated adjustments." Id. at 3.

Commerce argues that in Timken, this Court laid the premise applicable here, namely, that "'[n]either the pre-URAA nor the newly-amended statutory language imposes standards establishing the circumstances under which Commerce is to grant or deny adjustments to [normal value ("NV")] for PSPAs.'" Id. at 10 (quoting Torrington CAFC, 82 F.3d at 1048). Commerce argues that the Timken court properly "accepted Koyo's PSPAs, even though they were not reported on a transaction-specific basis and even though the allocations Koyo used included rebates on non-scope merchandise." Def.'s Mem. Opp'n to Mot. J. Agency R. at 5.

Commerce argues that its acceptance of rebate 2 was supported by substantial evidence because SKF could not provide information in the preferred form and that such a determination is consistent with 19 U.S.C. § 1677m(e) and the rationale in Timken. Id. at 11-12. Commerce reviewed SKF's data to ensure that it was not

unreasonably distortive, and it concluded that SKF reported rebate 2 to the best of its ability. Final Results, 63 Fed. Reg. at 33,326. Specifically, Commerce maintains that "[b]ecause SKF Germany grants [rebate 2] to distributors/dealers on the basis of their overall sales to the particular distributors/dealer, SKF Germany can not report this rebate on a transaction-specific basis." Final Results, 63 Fed. Reg. at 33,326.

Commerce maintains that SKF's reporting the rebate on a customer-specific basis was reasonable. Commerce verified: (1) that rebate 2 was granted on a customer-specific basis; (2) that the rebate 2 allocation was not distorted by out-of-scope merchandise; (3) that no variation existed in the "rebate when it was granted on in-scope or out-of-scope merchandise"; and (4) that "SKF's allocation in this review effectively removed any rebates paid on out-of-scope merchandise from the amount of the actual customer-specific adjustment." Def.'s Mem. Opp'n to Mot. J. Agency R. at 14-15. Arguing against the necessity of requiring transaction-specific reporting, Commerce states that when Congress adopted 19 U.S.C. § 1677m(e), it "cautioned Commerce against an obsession with perfection which results in rejection of reasonable reporting methodologies." Id. at 15.

**C.   SKF's Contentions**

SKF supports Commerce's position, asserting that its acceptance of rebate 2 was lawful and supported by substantial evidence.  SKF contends that rejecting rebate 2 would be contrary to 19 U.S.C. § 1677m(e) because even if SKF's information does not meet all of Commerce's requirements, the rebate was "timely, verifiable, reliable, [SKF] acted to the best of its ability, and the data can be used without undue difficulties."  SKF's Resp. to Pl.'s Mem. Supp. Mot. J. Agency R. at 5-6.  Moreover, SKF asserts that in recent decisions involving post-URAA law, "this Court has upheld [Commerce's] treatment of allocated rebates . . . as direct adjustments to price."  Id. at 5.

SKF maintains that the treatment of allocated rebate 2 as a direct adjustment to price is consistent with Timken, which held that 19 U.S.C. § 1677m(e) clearly permits allocated price adjustments.  See id. at 7.  SKF argues that this Court "'approves of Commerce's change in policy, as it substitutes a rigid rule with a more reasonable method that nonetheless ensures that a respondent's information is reliable and verifiable.'"  Id. at 8 (quoting Timken, 16 F. Supp. 2d at 1108).

Furthermore, SKF maintains that it fulfills the requirements of the applicable statute. Specifically, SKF argues that it complied with 19 U.S.C. § 1677m(e) since it submitted rebate 2 data

on a timely basis, the information was verified, responses to Commerce's questionnaire were complete and Commerce used the information without difficulty. Id. at 11-12.

SKF also maintains that Torrington CAFC is inapposite to the present matter because it "neither addresses nor precludes the approach to rebate 2 taken by" Commerce. SKF's Resp. to Pl.'s Mem. Supp. Mot. J. Agency R. at 15. SKF further contends that "the current law, which is different from that which was before the Federal Circuit in Torrington CAFC, addresses the issue of allocations and is highly relevant to assessing the lawfulness of [Commerce's] actions in the subject review." Id. at 18. Contrary to Torrington's contentions, SKF maintains that its allocations were not distortive and that Commerce's finding that SKF reported the data on as specific a basis as possible was correct. See id. at 26 (quoting Final Results, 63 Fed. Reg. at 33,326).

SKF also contends that "'[t]o verify the accuracy of the claim of payments, [Commerce] examined the customer-specific quarterly summary of rebate 2 entitlements and actual rebate amounts paid.'" Id. at 28 (citation omitted). Commerce "verified that rebate 2 is granted on a customer-specific basis, . . . calculated on a customer-specific basis, and that it is paid on a customer-specific basis." Id.

## III. Analysis

As a preliminary matter, the Court notes that <u>Timken</u> is directly applicable here.[2]  In <u>Timken</u>, this Court upheld Commerce's decision to accept Koyo Seiko Co.'s ("Koyo") billing adjustments and rebates, "even though they were not reported on a transaction-specific basis and even though the allocations Koyo used included rebates on non-scope merchandise."  <u>Timken</u>, 16 F. Supp. 2d at 1106.  Similarly, the Court is faced with the decision whether to uphold Commerce's acceptance of rebate 2, even though it was not reported on a transaction-specific basis and even though the allocations SKF used included rebates on non-scope merchandise.

The Court notes here, as it did in <u>Timken</u>, that "[n]either the pre-URAA nor the newly-amended statutory language imposes standards establishing the circumstances under which Commerce is to grant or deny adjustments" to NV for PSPAs such as rebate 2.  <u>See id.</u> at 1108.  Section 1677m(e), however, directs as follows:

---

[2]  The Court further notes that <u>Torrington Co. v. United States</u>, 82 F.3d 1039 (Fed. Cir. 1996) ("<u>Torrington CAFC</u>") is inapposite.  Commerce correctly noted that <u>Torrington CAFC</u> merely held that Commerce could not treat direct selling adjustments as indirect selling expenses and that it did not address the issue presently before the Court, that is, whether Commerce could use allocated adjustments to adjust the home market price.  <u>See</u> <u>Torrington CAFC</u>, 82 F.3d at 1051.  Additionally, <u>Torrington CAFC</u> was decided under pre-URAA law.

[Commerce] shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements . . . if--
>    (1) the information is submitted by the deadline established for its submission,
>    (2) the information can be verified,
>    (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,
>    (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce] . . . and
>    (5) the information can be used without undue difficulties.

19 U.S.C. § 1677m(e).

The Court finds that Commerce's decision to accept rebate 2 was supported by substantial evidence and otherwise in accordance with law. First, the Final Results demonstrate that the elements of § 1677m(e) were satisfied. There is no evidence that the information was untimely. Commerce verified the information. See Final Results, 63 Fed. Reg. at 33,326. There is no evidence that the information was so incomplete that it could not serve as a basis for reaching a determination. The Court agrees with Commerce's conclusion that SKF demonstrated that it acted to the best of its ability in providing the information and meeting the applicable requirements. SKF was not able to report rebate 2 on a transaction-specific basis because it grants the rebates to its distributors/dealers on the basis of total sales to the distributors/dealers. See id. Thus, SKF had acted to the best of

its ability. Finally, the last element of § 1677m(e) is satisfied since there is no indication that the information was incapable of being used without undue difficulties.

Second, at verification, Commerce found that SKF's allocation methodologies were not unreasonably distortive. See id. Specifically, Commerce determined that there was "no information on the record which indicates that the bearings included in SKF Germany's allocation vary significantly in terms of value, physical characteristics, or the manner in which they are sold such that SKF Germany's allocation would result in unreasonably inaccurate or distortive allocations." Id.

Third, Commerce's actions were also consistent with the Statement of Administrative Action ("SAA") accompanying the URAA.[3] The Court agrees with Commerce's argument that "given the large number of sales, and the manner in which the rebate is granted,

---

[3] The Statement of Administrative Action ("SAA") represents "an authoritative expression by the Administration concerning its views regarding the interpretation and application of the Uruguay Round agreements." H.R. Doc. 103-316, at 656 (1994), reprinted in 1994 U.S.C.C.A.N. 4040. "It is the expectation of the Congress that future Administrations will observe and apply the interpretations and commitments set out in this Statement." Id.; see also 19 U.S.C. § 3512(d) (1994) ("The statement of administrative action approved by the Congress ... shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.").

annual customer-specific allocations were reasonable." Def.'s Mem. Opp'n to Mot. J. Agency R. at 15. This is consistent with the SAA directive under § 1677m(e), which provides that Commerce "may take into account the circumstances of the party, including (but not limited to) the party's size, its accounting systems, and computer capabilities." H.R. Doc. No. 103-316, at 865 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4195. Thus, Commerce properly took into account the ability of SKF to report rebate 2 on a basis more specific than customer-specific.

In sum, the Court concludes that Commerce's decision to accept rebate 2 is reasonable and in accordance with law, specifically, with the post-URAA statutory language and the SAA. Although Commerce's decision represents a change from pre-URAA policy, the Court reiterates its approval of this change, "as it substitutes a rigid rule with a more reasonable method that nonetheless ensures that a respondent's information is reliable and verifiable." Timken, 16 F. Supp. 2d at 1108. Furthermore, Torrington presents no compelling reason why the Court should depart from its decision in Timken.

**CONCLUSION**

Commerce's treatment of rebate 2 is supported by substantial evidence and otherwise in accordance with law. Commerce's determination is affirmed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE


Dated:     April 19, 2000
           New York, New York